Good morning, almost the afternoon, Your Honor. No, it's not quite 11, not quite 12. Well, it feels like it. It feels like it should be the afternoon. In this case, first of all, it's Dr. Wissot. Wissot, okay, thank you. There were two choices. Wissot, okay. In this case, there are two primary issues. One is the choice of law, and the other is whether there's coverage under Plan 2 of the Great-West policy for lifetime benefits. I'll start. Oh, I'm sorry, Your Honor. I'd like to reserve five minutes for rebuttal. The choice of law only matters if it would matter, in other words, i.e., if California law would actually... It seems more orderly to me to start with the contract because until we know what the provision is, we don't know whether it matters. Yes, I understand, Your Honor, and I agree. The choice of law, if there's no coverage under the policy, then there's... But I do note that under... If you applied California law, then you would have to make a determination about the application of the process-of-nature rule, and that could change the outcome, depending... If it applies and if California law applies under the California choice of law rule. Yes, if California law, the process-of-nature rule, would have to be dealt with one way or the other. But I'll start with the contract. The primary issue on the Plan 2 coverage grant is whether Plan 2 is ambiguous. I mean, I would say that it's not ambiguous, that it provides coverage for Dr. Wissett for lifetime benefits, but I think the best you can say is that it's ambiguous. The Plan 2, in support of it being ambiguous, I argued in the briefs that grammar suggests that it's ambiguous, that the last antecedent rule suggests it's ambiguous, that if you apply the interpretation that Great West applies to the Plan 2 coverage grant, then you don't give any meaning to the phrase due to accident or sickness that appears in the Plan 2 coverage grant. And that specifically violates... Let me back up a little bit. When we dealt with the coverage, it was the coverage under Illinois law. So applying Illinois law, and I think California's the same, but applying Illinois law, you cannot render a term of a policy meaningless, which is exactly what Great West's interpretation does. You know, let me ask you this. I'll just read the phrase, and then we can talk about it. We're talking about for a total disability due to accident or sickness, which begins before the member reaches age 50. That's the language we're trying to deal with. I've got a problem if which begins does not refer to total disability. And the problem is, an accident which begins? Yes, as I pointed out in my... Accidents, you know, you have an accident, and then it's over. I'm afraid I have to disagree with you. Okay, so what kind of an accident? Accidents, if you're thinking of a slip and fall or an auto accident, you're talking about an instant of time. Yeah, I agree. So, yeah, I mean, that does sound right. Yeah. But what I pointed out in the reply brief is that this language is used by other carriers. But not in any disability plan. I'm sorry? Not in any disability plan. Well, not any disability plan that I could find, but it's used in other accidents. Well, yes, but for example, an environmental accident, which was one of the cases, does begin and continue often. Sure. That's different. In all kinds of cases. In carpal tunnel syndrome cases, in construction defect. I do a lot of construction defect work, and those continue for months, even years. The accident isn't confined to an instant of time. An accident is a much more elastic concept than Great West would have, you believe. I don't really understand the carpal tunnel. I don't understand the carpal tunnel example or any other one that would deal with a bodily situation. Well, in the carpal tunnel syndrome, you are repetitively using your hands in some fashion that is injuring you over time. And if that's determined to be an accident, which I think there are cases that have determined it to be an accident, then the accident in that case is not a single moment, but rather an expanse of time, whether it be a day, a week, a month, or even years. In the pollution context, you have lengthy periods of... No, I take the point, and I guess a pollution context could result in a disability. Okay, I take the point. Yeah, that's my point. And it strikes me as an odd usage, but I understand the point. Is there a specific definition of accident in the basic policy? No. Well, no, there is no definition of accident in the policy. Of course, I mean, even if you use the last sentence... I'm sorry, there is a definition of accident, and I can't recall exactly what the definition is. If you want me to look for it, I can, but would you? Well, I'm just curious if there was a policy that had a particular definition of the term accident. I didn't put it in the brief, so I... Well, there's a bunch of definitions. I can track it back, but it would take me a while, so... All right. There's a definitional section in general, right? Yes. But even if you apply the last antecedent rule religiously, you've still got a problem, because sickness is... You're not talking about sickness, you're talking about accident. No, no, no. The scaphoidal disassociation of the wrist is a sickness, as defined. It is a sickness. It is a deteriorating condition of the wrist that progresses over time and ultimately disables. So, no, I do not concede that, yes, the initial injury, yes, the initial... When Dr. Wissett had his bicycle accident, that was an accident, but then the condition gets worse over time, and that is defined by... Sickness has a definition, as I expressed in my briefs, and it meets in sickness... The scaphoidal disassociation meets that definition, so I don't concede. I believe that his injury was both an accident or a sickness. As a matter of fact, I was just talking to Dr. Wissett, and he said those two concepts are married together. It's not just one. They are like Siamese twins. You can't separate them, although I suppose sometimes Siamese twins are separated. So, any more questions? I mean, really, I have briefed this to a fairly well. I think I've given you everything I could possibly give you, at least on my thoughts, so I saw this as an opportunity to answer your questions. That was useful. I have to say, as I read California's choice of law, I have trouble concluding that the choice of law provision in the insurance contract that designates Illinois law would be disregarded by California. Would be disregarded by California? I have trouble... In other words, according to this, Illinois would apply. Yeah, I mean, I'm afraid that's where I am. I have trouble concluding that California's choice of law rules would allow you to avoid the application of Illinois law. But there's an exception. I agree with you. The general rule would be that the choice of law in the contract, in the policy, would apply. But there are exceptions to that, and those exceptions are if it violates a fundamental policy of California. I've argued that the process of nature rule is a fundamental policy. But let me ask you something. It has to be determined by this court or by the Ninth Circuit that it is... Excuse me. I'm sorry. The fundamental policy... Let's assume... My understanding of the cases in which the process of nature rule was actually applied were cases in which the time limit rule was... I mean, it was viewed as essentially arbitrary. I mean, it basically said that you have to... The disability has to follow immediately even if the disability shows up within the time period of the policy and even if there seemed to be no particular purpose to having that rule. And so if there was a policy, it was essentially the policy against arbitrary denial of benefits. That's exactly what I'm... But here, there appears to be... It's a somewhat different rule. I thought your reply brief was useful in explaining why you can logically see it as similar. I understand that. But nonetheless, in the general run of cases, this is what the point of this is, is that if you're working all the time before your turn is at 50 or what, then you're building up income and have less need for a lifetime benefit. I mean, it's not an arbitrary and stupid rule. So I have a discrete question. Okay. My discrete question is whether in determining the fundamental policy question, do we look at whether... Do we first decide whether California might apply its rule to this nonetheless and then just generically decide whether it's a fundamental policy? Or do we ask whether as applied to this, there's a fundamental California policy? I think the logical way to attack it would be to determine whether the process of nature rule would apply to this case. If you determine that the process of nature rule did not apply...  Yeah. But that doesn't make a lot of sense because it appears that in so far as... No. I mean, does the process of nature rule apply to this case? Right. And so if you say that it does, then you ask the next question, is the process of nature rule embodied in this case a fundamental policy? If you answer the question, no, the process of nature rule doesn't apply, then you're done with that. Then I lose. But if you answer the question, yes, it is a fundamental policy, then you have to determine whether this... You have to determine whether it is a fundamental policy. And then there's another step, and that is whether California has a material of greater interest, which is what the trial court latched on to. He didn't even rule on the fundamental policy issue. He ruled on whether it was a material of greater interest, that California had a material of greater interest. So that would be the approach that I would take if I were sitting in your shoes. And that's certainly the approach that I took when I looked at this case. Well, you've got a little over 2 1⁄2 minutes. Let's hear from the other side, and then you've got some time to respond. Good morning. May it please the court? My name is Joe Foshay, and I represent Great West Life, an annuity insurance company. Just to quickly respond to a couple of the points that the court's raised, the term accident is defined in the policy. The court can find that definition at page 94 of the excerpts of records submitted by counsel for the appellant. 94? Could you read the definition? Yes, Your Honor. It states, an accident... It's referred to as the basic benefits portion of the policy. It's important to understand there's two layers of benefits that this policy provides for. The so-called basic benefits provided for different duration of benefits, depending on the cause of the total disability. For a sickness, it would give rise to benefits payable for 24 months. For an accident, it would give rise to benefits payable for 60 months. That changes in the context of the language we're worried about in this case. The optional long-term benefits. For the purpose of that benefit, the cause of the disability became irrelevant. And that's what the district court focused upon. But are you telling me... Is this a long way of telling me that the definition of accident you're about to read doesn't apply to Plan 2? No, I apologize, Your Honor. The definition states as follows. An accident is up to 60 consecutive months. Accident means a sudden and unforeseen event that A, causes injury to the physical structure of the body, and B, results from an external agent or trauma, and C, is definite as to time and place, and D, happens involuntarily, or if it is the result of a voluntary act, entails unforeseen circumstances, and E, happens while the member is insured under this policy. It does not include harm resulting from disease. That's the language of the definition of accident. And so I would submit that the long-term environmental accident really doesn't fit that particular definition of the term accident. In evaluating this case, and I think Judge Berzon anticipated this point, and what I've come up with is, what I view as a relatively simplified and streamlined approach to handling this appeal. The first question that the court should consider is whether or not the policy language is ambiguous. Well, let me just ask you, if it is ambiguous, do you lose? If it is. Under Illinois and California law, and we don't go any further because of this general rule, that if it's ambiguous, and it could be construed in favor of the policyholder, then he wins? Yes. Okay. I would like the opportunity to persuade you that it's not ambiguous. Okay. But yes, I would concede that point. The second point is that if, as the district court found, and as we've argued, that the policy language is unambiguous, whether California's process of nature rule applies. And Judge Berzon, I think the point that you raised during the questioning of appellant's counsel is on point as to this issue. And that is, how does the process of nature rule apply to this policy language? Even appellant concedes that the process of nature rule has never applied in the context of a policy language like this. It's a sparingly applied, narrow rule that applies in the setting where an insurance policy term, almost as far as I can tell, exclusively involving accident policies, that the disability or death arising from the accident occurs within a specified and arbitrary period of time following the accident. So, for example, the policy may say the policy benefits will pay in the event that the total disability or death, as the case may be, occurs within 30 or, say, 60 days of the accident giving rise to the total disability. And his example, which was sort of clever, is what if the accident occurs 30 days before the guy turns 50, then you have exactly the same thing. If the policy, well, yeah, but that we don't have that policy. I'm sorry, I don't understand what you mean. Well, there's no question. What does this policy say now? Well, this policy says for a total disability due to accident or sickness, which begins before the claimant turns age 50. All right, so if he had an accident when he was 49 and 10 months, he became disabled when he was 50 and one month, then it would be equivalent of having a 90-day rule. Well, the policy wouldn't say that, Your Honor. That would be a way of trying to shoehorn the process of nature rule into this case. But what we're really concerned about with this, first of all, I think it's important for the court to understand, as the district court did, that this policy, first of all, it's a disability policy, and when a court interprets an insurance policy, it has to take into account what's the purpose of this policy. The basic purpose is to pay benefits for lost income. And with respect to the optional long-term benefits payable under this particular policy, it had a secondary purpose that the district court also took into consideration. And that is it's self-evident that the purpose of the policy would be to pay for a longer period of time in the event that the claimant lost income during the prime earning years prior to age 50. That's the whole point. Well, I mean, so the real, I mean, this is the question I was asking before. I mean, in this case, it seems that policy is totally met. It doesn't seem at all arbitrary. It makes a lot of sense. The guy worked for some years and built up income for those years. But it could, I mean, in the example I gave, for example, operate completely arbitrarily and cut somebody off, you know, who didn't really have any additional working period of any significance, right? Well, the only thing I might quibble with, Your Honor, is whether it's completely arbitrary. I mean, the policy says if you're disabled before age 50, then you get longer benefits. All I'm saying is it's arbitrary the way any rule is arbitrary. That is with any stock rule, right? But it can have results in which there is no way that any sensible policy is being met. Sort of like the process of nature rule, the usual process of nature cases. Right. But then we need to focus on the process of nature rule. I mean, this policy didn't make some sort of a, it was completely indifferent to the passage of time between an event that causes a disability and the disability. It doesn't speak to that at all. And the process of nature rule uniformly states that it's that type of policy provision that it's aimed to address. Now, my point would be that because that rule doesn't apply to this policy, the choice of law issue essentially becomes irrelevant because the policy does not apply. And therefore, we don't really need to weigh these. There's a way of saying that even if the process of nature rule does apply to this policy, then there's no fundamental policy because it doesn't really forward any particular policy. Right. In going through the accurate choice of law analysis, I think we have to go through this whole is there a substantial relationship of the law that's chosen to the contract? Is there a materially greater interest that the forum state has? All of that stuff has to be looked at. And both sides did that in their briefs. But from the standpoint, if I were in your shoes, Your Honor, I think that I would first ask does the one and only fundamental policy of California that plaintiff is referring to, which is the process of nature rule, does it apply to these facts? If the answer is no, we don't need to get into all those other issues. If the answer is yes, then I would submit that we have to do what we did during the briefs and ask the question, is this a fundamental policy of California? I think the answer to that is no for all the reasons we stated. You said one of the things you say is that you can't have a fundamental policy that's not in a statute of regulations. Is that right? Well, we stated that the Green v. Raley case suggested that, and again, the terminology is slightly different. I want to be completely honest about it. I mean, the Green v. Raley case said public policy of California and concluded that public policy of California is set down by the Constitution and by legislation. And then, incidentally, there have been some cases suggesting that regulatory decisions that are implementing legislation. Was that in the context of the fundamental policy choice of law issue? It was not. It was in the context of 17-200. Is that what it was? It was in the policy of employment law. I think it was a 17-200 case. Go ahead. So, yeah. Oh, yes. I know what it was. It was the public policy for discharge. Correct. Correct. And so I suggested in the brief that if that's what the source of public policy is for those purposes, there's nothing to suggest that the source of public policy and choice of law analysis should be anything other than the Constitution or legislation. That is, courts shouldn't be in the business ordinarily of dictating what the public policy is. And I suppose that concepts of federalism might suggest that federal courts might even be less inclined to wade into that analysis than state courts. Well, sorry. If we've got a diversity case and we're supposed to apply California law, we do the very best we can. But that doesn't mean we hesitate to do the best we can to figure out what California was going to do. No. And I'm not suggesting that the court would or should do that. And, frankly, that's a fairly minor point. The point really is that there has been no decision suggesting that the process of nature rule is a fundamental California policy. What the appellant has cited is a case stating, for the purpose of a risk of preemption analysis, that it's a rule of insurance regulation. Well, okay, it's a rule of insurance regulation, but does that mean that every judge-made, court-made common law rule constitutes a public policy? I would suggest no, it does not. But, again, all of this issue about whether or not it's a public policy or if the process of nature rule is founded. Would apply to this case, of course. Correct. Having gone through that process, so I think, again, to recap, if the policy is unambiguous, then Great West wins, unless the process of nature rule applies that unambiguous or modified. Let's go back to the ambiguous, okay? Pardon me? Let's go back to the beginning, now that we've gone all the way down the decision train. My, I mean, I can tell you what my sensitive reaction here is, which, again, is just mine, which is, you know, do I think that what they meant was the disability has to stay? Yes. But do I think it's unambiguous? It's hard to say it's unambiguous. I mean, it seems to me that, I mean, the fact that this is a disability policy and that there are good reasons that you would have this kind of a rule in a disability policy and so on would all lead me to the ultimate conclusion that, in fact, your instruction is right. But I don't know that I can say it's unambiguous. Well, Your Honor, what I would recommend, then, is that the court look at pages 20 to 22 of the district court's June 12, 2013, order. I think the court did an excellent job of explaining why the policy is not ambiguous. And going back to one of my first points, or one of my earlier points, that the mandate of a court interpreting an insurance policy provision is to read the entirety of the contract together. That's why I mentioned the fact that the basic benefits provided one level of benefit for disabilities due to accident and another level of benefit due to disabilities caused by sickness. That issue becomes totally irrelevant in the context of the optional long-term benefits. And that's why the language says, total disability due to accident or sickness, which begins. Because now we're no longer concerned with the two-year, five-year distinction of the basic monthly benefits provisions. And the district court understood that and focused on that. And it recognized that that's why that language appears where it does and why it says what it says. Because now, for the optional long-term benefits, we're no longer concerned. Either way, whether your disability is caused due to sickness, whether your disability is caused due to accident, you get benefits up to age 65. And if your disability arose before you were age 50, your benefit is cut in half and paid for life. And so, Your Honor, I think the question is not whether one might try hard to come up with a rationalization that this language might read the way the appellant suggests it should read. That's straining. Because in the scheme of the entire policy, read together, which the court must do in interpreting an insurance policy, it makes perfect sense. It is the reasonable conclusion, and that's what the district court found. The next point, Your Honor, would be that, again, I think we're on the same page with respect to how the appeal should be disposed of. I would agree with you that if you conclude that the policy is ambiguous, which obviously we disagree with, then appellant prevails. Alternatively, if the court agrees with the district court, finds that the policy is unambiguous, then we ask the question of whether the process of nature rule applies. If it does not, Great West prevails. Well, then what? We raised a lot and devoted a lot of pages in our briefs, Your Honor, to knocking down a lot of the other issues that might present themselves in this case with respect to the second through seventh causes of action that are set forth in the appellant's complaint. We did that only because the appellant states sort of in a throwaway comment that if the court finds that the contract is ambiguous, then the matter should be remanded for further determination. Well, I would submit, Your Honor, that if, and by no means am I hoping or asking you to reach this conclusion, that if the court finds that the policy is ambiguous, I would submit that the only appropriate thing to do in that circumstance would be to award benefits under the declaratory relief cause of action. But all those remaining causes of action should nevertheless be gone. Why? Well, first, the appellant nowhere in the two briefs suggests that or argues that if Illinois law applies, those six causes of action are not preempted by Illinois law and the remedies that are provided by Illinois law. So if Illinois law applies, then there's no reason to reach those other six causes of action. There's no basis for the remand. He didn't even argue those issues in the brief, did he? No, other than to suggest again in essentially a one-line comment that everything should be remanded. I mean, it would be easier if he had said, we agree that if Illinois law applies, all those causes of action go away. But our feet were put to the fire to at least address them in the event that the court disagreed that the issue had been raised. Okay, got it. Thank you very much. And you've saved some time. Just real quick. Okay. By the way, I didn't introduce, I'm Phil Thompson. Real quick, if Illinois law applies, I agree with counsel that the only cause of action that remains is the declaratory relief. And so if I didn't put that in the brief, I apologize. And then just one quick point on ambiguity. The phrase is total disability due accident or sickness, which begins. Total disability is boldfaced because it's defined. So if the, you know. Now, I wondered about the boldfaced. You've boldfaced it in your brief. It's boldfaced in the policy. Is it? Because I looked at the reproduction of the policy in the ER and it's not boldfaced. Well, you know, but if you look, it's bad reproduction. It's boldfaced. I think counsel will agree with that. Well, doesn't that boldface cut against you? That's what I would have thought. I'm sorry? Doesn't the boldface cut against you? No. Because the total disability, then you have to put the whole definition in there. And you have a repeat of the phrase due to accident or sickness, right? So that if what counsel suggested that the reason why they put something in there, they didn't have to put it in there. It could have been just total disability boldfaced, which begins. And you're good. Because the definition of total disability is due to accident or sickness. So by repeating the phrase, it only caused confusion and it only caused, I mean, I'll tell you right now, if that weren't true, I wouldn't be standing before you today. Because that is what caused the confusion. And, in fact, my client, Dr. Wissett, is a bit of a language maven. And he was adamant that if you put those things together, that at the worst, at the best for Great West, it was the phrase, the Plan 2 Coverage Grant, was ambiguous. But if you really looked at it closely, it probably means what we say. Is there any reason why anybody would write the policy the way your suggestion was written? Why? I have no idea why that. I can't go into Great West mine and there was no evidence. It doesn't make any difference that it makes a lot of sense read one way and very little, none read the other. What do you mean? You're talking about if you read it my way, it doesn't make sense? I think, in fact, that. I mean, it makes sense. But why would you write it? What would be the purpose of having that distinction between before 50 and after 50 based on when the accident occurred as opposed to when the disability occurred? Why would you do that? Well, you want to arbitrarily cut off the right to lifetime benefits. That's how I read it. It would be arbitrary. And the other way, it wouldn't be arbitrary. It would have a function and a purpose. The other way, which other way? I.e., if it's a disability, it has to begin before 50. If the disability has to begin before 50 as opposed to the act, yeah, I agree with you. It's arbitrary either way. Well, why is it arbitrary the second way? The second way, I understand it can operate arbitrarily, but the second way, you can explain why they would include it, which is essentially that if somebody works longer, they need the lifetime benefit less. Well, you know, that's an excellent point. Where in the policy does it say that that's the purpose? Okay, now you're making a textual versus purposive discussion, but I would still like to know whether it's true that that one at least has a purpose and the other one seems to have none. Your version seems to have none. My version has none? No. I laid it out in my – it's the difference between the – read my briefs. I did read your briefs. Okay, I apologize. Very carefully. You might have noticed. I apologize. I know you read my briefs, and I know you read it very carefully, too, because a moment ago I recognized that. But it does serve a purpose. As a matter of fact, there is no purpose if you have their language because it repeats the phrase due to accident or sickness, but if you – the due to accident or sickness has to be differentiated between the cause of the disability and the disability itself. And, you know, I can't express what I wrote in my brief. I'm not doing a good job of that right now, and I apologize. But my argument is in the brief. Okay, well. Any further questions? No, we appreciate the argument from both sides. Good arguments. Hard case. Submitted for decision. Okay, I agree it's a hard case.
judges: Fletcher, Paez, Berzon